In the Matter of the Accounting of Darwin R. Wales, as Executor of Jane M. Wilson, Deceased.

Surrogate's Court, Broome County, December 4, 1953.

*Darwin R. Wales,* as executor, petitioner in person.

*Lloyd C. Anderson* for Julia K. Hearon, and as special guardian for Ann St. Coeur, an infant, respondents.

*A. Lawrence Abrams* for Letitia L. Sage, respondent.

*John R. Normile* and *Robert L. Sweeney* for Elizabeth Whittemore, respondent.

*Murray I. Dann* for Eliza W. Crozier, respondent.

PAGE, S. The sole objection to the executor's account to be determined herein arises from paragraph "Fourth" of the will of the deceased, providing as follows: "Fourth: I give and bequeath to Elizabeth Whittemore of Saranac Lake, New York, and now employed in the City of Binghamton, New York, my diamonds and settings and my amethyst ring, my emerald ring and their settings."

In relation to this provision, schedule B of the account herein contains a long statement, the substance of which is that the executor has been unable to find any articles of jewelry left

by deceased corresponding to the description thereof contained in the above-quoted paragraph, together with a detailed recital of the extensive efforts made by him in an endeavor to locate the same and dispose of them as provided in the will.

Elizabeth Whittemore, the specific legatee named in this paragraph, filed an objection to the account with respect to this item, alleging that, '' upon information and belief, that said property was still in existence and in the possession and ownership of said decedent at the time of her death, and that it was thereafter lost, destroyed or otherwise disposed of,'' and '' that the value of the property so bequeathed to respondent is the sum of $10,000.00,'' and praying, '' that it be determined in this proceeding that the legacy aforesaid did not adeem and that the decree herein direct payment to the respondent of the value thereof.''

The deceased died on the 4th day of September, 1945, at Walter Reed General Hospital at Washington, D. C. For several years previous thereto, she had been a member of the armed forces of the United States, as an army nurse. As such, she had served overseas and had been returned to Walter Reed Hospital for treatment of carcinoma from which she died.

While a patient at this hospital a few days before her death, she transmitted a request to attorney Darwin R. Wales that he visit her for the purpose of assisting her in the preparation and execution of her will. Mr. Wales did so and the date it bears shows that it was executed the day immediately preceding the date of her death.

It is not to be presumed that the act of the testatrix in making the specific bequest of her jewelry to Miss Whittemore was a mere mockery of their close friendship of many years' duration. The presumption that this was not so, coupled with the fact that the testatrix died only one day after she had executed her will, indicates very strongly that she died possessed of articles of jewelry of the description contained in the above-quoted paragraph '' Fourth '' of her will. By far the most probable explanation of the fact that all of these articles of jewelry are missing is that she had had them in her hospital room and that, before they could be accounted for following her death, some individual had an opportunity to steal them and did so.

There appears to be authority to the effect that an executor of a solvent estate has no responsibility in relation to specific bequests. (See *Matter of Adams,* 159 Misc. 827; *Matter of Columbia Trust Co.,* 186 App. Div. 377.) As a summary of

the law in this connection, Bradford Butler, in his "New York Surrogate Law and Practice," (Vol. 3, § 1998) states the synthesis of cases as follows: "By reason of the conception that a specific devise or bequest amounts to a conveyance, title passes to the legatee or devisee direct, subject to a possible lien * * * and an executor of a solvent estate is under no obligation to take possession of the subject matter of the gift or make physical delivery thereof to the legatee."

This apparent judicial indifference in relation to the interest of a specific legatee would seem inconsistent with the concept that, in nominating an executor of his will, a testator has reposed confidence in him that he will, to the best of his ability, effectuate all of the testamentary provisions thereof. In my view, the law as it should be would be that, at least to a reasonable extent, the executor ought to be held responsible for the fulfillment of his testator's will with respect to all the provisions thereof, including and not excluding specific bequests.

However, in the present case, there is no basis of liability either as to the executor personally or as to the estate represented by him. This is so because either there was an ademption of the specific bequest in question or, as seems more probable, the loss of its subject matter occurred without any fault on the part of the executor. Here the executor has done the best he could on behalf of the donee of a specific legacy just as much as if he were strictly obliged to do so.

Thus it appears that, in the present case, we do not need to go to the extreme, which seems to be in line with the above-cited authorities, of exonerating the executor from all responsibility whatsoever with respect to the specific bequest here in question. Here we are limited to the proposition that the loss, just the same as if it had been caused by fire or in some other unpreventable manner, resulting in the fact that the jewelry cannot be found is a misfortune of the legatee which cannot, in whole or in part, be passed on to nor required to be participated in by other beneficiaries of the will.

Moreover, we must consider that the objectant, under the facts as they have been developed herein, is, in effect, a claimant against the estate, the amount of her claim being alleged by her in the sum of $10,000. Even if her claim were otherwise tenable, it would be incumbent upon her to show its amount with reasonable certainty. This would be dependent upon the fair market value of the jewelry.

The testimony as to this question was limited to that of a witness who, more than twenty-five years ago, had observed some articles of the same general description. This witness had seen diamond and emerald rings in the possession of persons from whom, as she surmised, they had been passed on to the testatrix. Although it appeared that this witness did the best she could by way of testimony as to her recollection of the description of these articles, her description of these rings and other pieces of jewelry was very vague.

Her testimony was supplemented by calling a very able expert witness. But the basis for material and relevant testimony on the part of an expert witness must be either his previous observation of the subject matter of the inquest, or his opinion in response to a hypothetical question comprehending substantiated facts. Since, in the present case, neither of these foundations could be established, as appeared to have been pretty much conceded by the expert himself, his testimony cannot be regarded as sufficient with respect to the accomplishment of the purpose for which it was given, viz., to establish the fair market value of the jewelry here in question. Therefore, any conclusion pursuant thereto would be based upon the rankest sort of a speculative surmise. In other words, the evidence as to value is wholly insufficient. In the determination of litigated issues, '' insufficient evidence is no evidence ''.

The testatrix was unmarried and left no relative closer than a brother. In providing this bequest for her close friend, the objectant herein, undoubtedly, she was concerned with conferring a substantial benefit upon her.

That the bequest was extinguished by ademption is highly improbable. But, because of the above-stated legal reasons, this court is, nevertheless, helpless to enforce the clearly apparent desire and intention of the testatrix. This case suggests that an expert draftsman ought to inquire of a prospective testator as to his attitude in regard to an alternative general bequest, in the event that the fulfillment of a specific bequest (or devise) of relatively large value should prove to be impossible. In the absence of such an alternative, there is nothing more than a moral obligation, the fulfillment of which cannot be realizable in any way other than the voluntary recognition thereof and some compliance therewith by beneficiaries of fairly large estates such as this is.

The other objections having been settled by agreement, submit decree in accordance therewith and with this decision.